Either they've lowered the chairs or they've raised the bench. Good morning. Welcome to the Ninth Circuit. We're delighted to have you here. We're also delighted to have with us today, as a visiting judge from Pennsylvania, District Judge and formerly Dean and Professor Pollack, Judge Clifton and I were both classed in 1975 at Yale Law School. I think Judge Clifton was not as lucky as I in having Judge Pollack as a professor. Judge Pollack taught me conflicts and everything I know about conflicts. I owe to him everything I don't know. I must have skipped class that day. So, Judge Pollack, we're delighted to have you here. Thank you for joining and helping us out. I'm delighted to be here. I'm glad to say that the records show that both of these students have performed admirably then and now, and it's a delight to be working with them. Okay. Well, welcome. We're delighted to have you. We have read your briefs. We're looking forward to your arguments. The first case on the calendar that we have submitted is, say, Hernandez-Aguilar v. Holder. The second case is an argued case, Barragan-Lopez v. Holder. When you're ready, counsel. Who's first? Well, good morning, Your Honor. This case involves — I'm sorry to interrupt. Just for the record, could you state your name for the record? John M. Levant for the petitioner. Okay. Thank you. This case involves the issue as to whether or not the crime of false imprisonment, which Respondent was convicted, is an aggravated felony under, as defined by 18 U.S. Code 16b, under the categorical and modified categorical imperative test, a review of the statute and the conviction must — all the applicant's conduct as defined in the conviction and the record of conviction must show that he is guilty of a crime of violence as defined in Section 16b, which defines a crime of violence as one involving the use of physical force against another or which substantially increases the risk of physical force being used against the victim. The statute under which the petitioner was convicted, California Penal Code Section 210.5, defines false imprisonment for purposes of protection from arrest as an offense which substantially increases the risk of harm to the victim. The definition of substantially increases the risk of harm to the victim does not correspond to the definition of violence in 18 U.S. Code Section 10b, which requires that there be a risk of physical force applied to the victim by the perpetrator. It requires an intentional conduct. Now, why, Harvey, you added the words by the perpetrator. You added the words by the perpetrator. 1610b requires the risk of physical force in the commission of the crime. Now you left out some words. In the course of committing the offense, which implies possibly, and this would be your reading, that the risk of harm or risk of physical force has to be by the person committing the crime, whereas if the person is being used as a shield, which is your argument, the risk of harm may be the harm committed by somebody else, that is to say perhaps police officers or somebody else trying to get at the person who's shielding himself. I mean, let's say that that situation is distinguishable. Also, in the Supreme Court case of Leocal, they were giving the hypothetical of burglary. There are two parts to the hypothetical. A substantial risk that the burglar would commit physical force against another in the course of the burglary, or that even if the burglar did not intend to do so, that he might, under the circumstances, put himself in a situation where he, the burglar, would be using force against the victim. And in both cases, force might be used against the burglar. And I think the Supreme Court noted the possibility of burglaries in progress and somebody stumbles across it, and force could be applied in either direction. Your argument suggests that force would have to be applied by the burglar. It seems to me the Supreme Court's observation suggests the contrary. The problem is, or the statute requires only a substantial risk of force result. I don't think it specifies, or you need to persuade me why it specifies the force has to be applied by the criminal perpetrator. Why somebody who isn't using a hostage as a shield can't be held responsible for exposing that hostage to risk, possibly in the form of being hit by a bullet shot by the police officer. So why isn't that covered by the statute? The statute uses the terminology substantially increase the risk of harm. It doesn't have the term physical force. Well, sure it does. The statute says, well, it's not the statute you're talking about. I'm talking about California Penal Code Section 5010. It substantially increases the risk of harm to the victim. I don't think they're concerned about a victim losing money in the process of being held as a hostage or being used as a shield. The risk there is plainly one of physical injury resulting from physical force. It seems to me, I mean, your job is to try to persuade me why that's not right. But I don't understand what's different about it. In either case, under 10 U.S. Code Section 10B, the risk of physical force must arise from intentional conduct. Risk of harm from negligence or even recklessness or gross recklessness is not sufficient. Well, how do you explain the burglary situation? You told the Supreme Court a site of burglary. A burglar doesn't intend physical force. Physical force may result as a byproduct of the burglary. So how do you explain the Supreme Court's reference to burglary with reference to this statute if the statute requires intentional physical force? It seems the Supreme Court's referencing is inconsistent with your theory. I believe the Supreme Court was referring to physical harm being committed by the perpetrator. I don't think 10B would include a situation where the physical force was applied by someone else, for example, by the police intending to apprehend the suspect. Wouldn't it be improbable that one would want to exclude that kind of scenario from the definition? What reason would a legislator have for saying, well, we don't want that covered when we're talking about dangers? The Penal Code section refers to substantially increases the risk of harm. That test could include conduct which arises from gross recklessness or negligence as well as intended conduct. I would note in the indictment under page 203, although the Petitioner was not convicted under count two, count two alleges that the victim was a child. And there is no dispute that the victim was a child. If the Petitioner was simply holding his child while he was attempting to avoid the officers or if the Petitioner felt the officers were trying to take his child away from him and was just simply trying to hold on to the child without the intention of harming him, I don't think this would be a crime of violence. It would be the crime of false imprisonment. It would be the crime of attempting to avoid arrest. But I don't think it would be a crime of violence as defined in section 10B. Under the categorical imperative test, all the conduct prescribed by the statute and as reflected in the indictment and information must include conduct which could be an aggravated felony. I note in the record in the dialogue between the Petitioner's attorney and the judge when the Petitioner referred to the fact that the victim was a child and the parent was attempting to hold on to his child while he was avoiding arrest, the judge said that this is not irrelevant because it wasn't included in the information. But it was included in count two. Even though the Petitioner was not convicted in count two, the victim was a child. The scenario you offer up, he's trying to protect his child, but the California statute says against the person for purposes of protection from arrest. So a conviction under the California statute would exclude the factual scenario you've given us. In that case, the child isn't being held to protect the offender from arrest. Arrest is being held to protect the child, you hypothesize. But a conviction under the statute doesn't open the door, I don't think, to the factual scenario you offer. Or he may have been just holding on to the child in an attempt to avoid the police officers. Well, for purpose of protection from arrest. If he's holding the child to keep from himself getting arrested, yes. He's putting the child in the middle of a situation the child shouldn't be in. But he may not be using force against the child. He may just be holding the child. But while he's attempting to flee from the police officer. He's putting the child between himself and the police officer. That's not a good thing for a father to do. I understand, but that's reckless endangerment. That's the same type of situation where a parent leaves a child in a car on 101 degree weather or refuses to take the child to the hospital and they're suffering from a serious illness. These cases have gone before the courts. And while they've been defined as reckless endangerment, it's not a crime of violence as defined in Section 10B. It could be reckless endangerment to try to run away with a child from police officers. But unless violence is used against the child, we will maintain it's not a crime of violence. Okay. You've run over your time by just a bit. Let's hear from the government and then we will give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Catherine Clark, appearing on behalf of the Attorney General. As the Court has said in this case, the risk here is plainly one of physical force, of physical injury resulting from physical force. How do we know that harm in the California statute is physical harm? The nefarious purpose behind this statute, the purposes listed resisting arrest and using the victim as a human shield are what shows, by their inherent nature, that physical harm is the risk here. Well, how do we know? Certainly that would be included. I understand that. But if we're talking categorical approach, how do we know that risk of harm does not include, and is sufficient for purposes of the crime, psychological harm? That is to say, if a father takes his own child, uses the child as a shield, and we have then physical harm, nothing happens. It turns out in the situation itself, realistically, there was no risk of physical harm, but there was risk and it eventuated in psychological harm. How do we know that the word harm here is restricted to physical harm? The harm in the statute of conviction need not be restricted to physical harm, as long as the physical harm is one of the things that is risked in every conviction. I just gave you an example, and maybe it's a little far-fetched, and maybe we won't find one, which may be your answer, but I just gave you an example in which there is no risk of physical harm, but there's substantial risk of psychological harm. How do we know that that's not sufficient for conviction under the statute? Because there has never, at least in the published case law, been a conviction under 210.5 that did not involve a risk of physical force being used. The California Court of Appeals in People v. Gomez, cited by the Board, clarified that the purpose of resisting arrest needs to be present because a simple risk of harm is just simply creating the risk of harm is not enough. And that purpose of resisting arrest, this Court has found, to inherently involve a risk of physical harm, and that is in the Estrada-Rodriguez case. The California Court in People v. Gomez also found that this statute was analogous to kidnapping, and this Court in Delgado-Hernandez did find that kidnapping inherently involves a risk of physical force being used against the victim because it shares a purpose with the 210.5 conviction. Additionally, the jury instructions for section 210.5 support a holding that this conviction necessarily involves physical force because those instructions state under section 3 that the victim must not consent to being restrained, confined, or detained in order to obtain a conviction. And then the note refers to a definition of consent, which in cases of minors refers to a second definition. That second definition, located at California Jury Instruction 9.57 states... Kennedy. Now, he was he pled to this crime, correct? He did. So the jury instruction does what to us? Is a jury instruction a proper construction of California law? How do I know that? The jury instruction, even whether or not there was a jury in this case, states the elements that are required for conviction. And how do I know that I get to look to jury instructions as an authoritative construction of a statute? It's a staple of our business to go after jury instructions to see whether they are a correct statement of the law, and sometimes they're not. And these jury instructions have not been held not to be. And have they been held specifically to be? I can't. Not to my knowledge. I can conduct additional research into that and inform the court if the court would like. Whose instructions are they? Are they prescribed by a court or are they something better, a scholar's instruction? They are prescribed according to the Committee on California Criminal Jury Instructions. At any rate, these would be, even if the court did not find these to be binding authority, these are persuasive and these could be a source to look to. And additionally, they're not necessary for the holding that the purpose of this statute, the purpose requirement of resisting arrest and using the victim as a human shield, these purposes inherently create a risk, a substantial risk that physical force will be used regardless of what the jury instructions are. These distinguish, these purposes distinguish the case from a Section 236 simple false imprisonment conviction as well because they do imply that, they do require that nefarious purpose. And that is exactly the purpose that the court found to be absent from a simple false imprisonment conviction in Gonzalez-Perez. And that was the reasoning why that simple false imprisonment conviction did not involve a substantial risk that force would be used. Now, that reason is, of course, negated and the enhanced purpose requirement is present here. So the rationale of Gomez-Perez leads to the, excuse me, of Gonzalez-Perez leads to the conclusion that this, unlike Section 236, Section 210.5, is a crime of violence under 16b. Every conviction involves at least a substantial risk of physical force, even if not every conviction actually ends up involving physical force. The risk is present and that is all that's necessary. Okay. Does the California case law make it clear that that's how the California courts understand the statute? The California courts have, under, in Gomez, have likened this statute to kidnapping and have explicitly stated this statute is analogous to kidnapping and that it was enacted to ensure that hostage-taking was punishable as a felony like kidnapping. So pardon for not giving a shorter answer. The answer is yes, the courts have spoken, if through a slightly indirect analogy, because this Court has stated, has held that kidnapping is a crime of violence. I'm really wondering whether any of the California opinions have sought to distinguish the scenario that Judge Fletcher has offered to you where the harm to be apprehended is not physical. The psych – none of the courts have – none of the California courts have explicitly distinguished that, perhaps because there is simply no published law in which a 210.5 conviction has come out with a psychological harm finding alone or, as far as I'm aware, with a psychological harm finding at all. The question is not whether psychological harm could also result from the events. The question is whether there is always a risk of physical force causing physical harm, and there is always such a risk in these convictions, even if there is a psychological harm risk as well. These are not mutually exclusive. And the fact that there is no California law stating psychological harm is not enough on its own may simply arise from the fact that there would not be a prosecution for psychological harm on its own. The inherent – if the Court has no further questions, I will sum up. The inherent nature of a Section 210.5 conviction involves a substantial risk of physical force because a Section 210.5 conviction has an enhanced purpose that renders it analogous to kidnapping and resisting arrest, both of which the Court has found to be crimes of violence of a categorical nature under Section 16b. Therefore, the Board properly determined that Petitioner was removable as charged and the Court should dismiss the petition for review. Okay. Thank you. Mr. Blumenthal, would you like a minute to respond? Yes. Your Honors, I would respectfully disagree with Government counsel. 10b requires more than psychological harm. It requires the application of physical force against the victim. Anything less than physical force will not satisfy the definition of aggravated felony. I'd like to make some comments to the Court about the context in which this case is occurring. There's a well-standard, I believe, principle of immigration law, and it goes back to the Supreme Court that deportation statutes, when used against the alien, should be strictly construed. This particular statute of aggravated felony, if the crime is defined as aggravated felony, the Petitioner will be deprived of any opportunity for getting any relief before the immigration court. I think it was clear that in this particular situation, Congress intended to apply this penalty. I don't mean to interrupt you, but you've just used the minute that we gave you, so if you've got one important thought to leave us with, now's the time. Congress intended to apply this penalty to violent offenders. If the respondent is not defined as an aggravated felon but is given the chance to apply for cancellation of removal, this in no way guarantees that he will be granted that relief. As the Court is aware, our position is that in attempting to hold on to the child while he was evading arrest, that this is not, in fact, an aggravated felony. It's not a crime akin to intentional application of physical force but a crime akin to reckless endangerment. Even in the opportunity of applying for cancellation of removal, the immigration judge can take this into consideration and deny cancellation as a matter of discretion. So granting him the opportunity for applying for cancellation of relief is no guarantee that he will get this relief. All he's asking for is a chance. And again, we ask the Court to consider the well-established principle that deportation statute should be construed strictly when they bar aliens from any relief and under the categorical imperative test. All the conduct must be considered, even though it's possible. No, we understand that argument. Thank you very much for your arguments. Thank you, Your Honor. Thank both sides for their arguments. The case of Berrigan-Lopez v. Holder is now submitted for decision. And the next...
judges: Pollak, Fletcher W. , Clifton